UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUIS VICENTE,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   Civil No. 3:17-cv-611(AWT) |
| DEPARTMENT OF<br>CORRECTION, et al.,<br>    Defendants. | :<br>:<br>:<br>: |

**RULING ON MOTION FOR SUMMARY JUDGMENT [ECF No. 61]**

The plaintiff, Luis Vicente, commenced this civil rights action pro se. The remaining defendants, Giuliana Mudano, Scott Salius, Matthew Prior and Angela Walters, have moved for summary judgment. For the reasons that follow, the motion for summary judgment is being granted.

**I.    LEGAL STANDARD**

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and, based on those material facts, the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; Redd v. New York Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012). "When the nonmoving party will bear the burden of proof at trial, the moving party can satisfy its burden at summary judgment by 'pointing out to the district court' the absence of a genuine dispute with respect to any essential element of its opponent's

case: 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" Cohane v. National Collegiate Athletic Ass'n, 612 F. App'x 41, 43 (2d Cir. 2015) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "'rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" Robinson v. Concentra Health Servs., 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted). He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). Although the court reads pro se papers liberally and interprets them to raise the strongest arguments they suggest, Willey v. Kirkpatrick, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and are insufficient to oppose a properly supported motion for summary judgment. Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

## II. **FACTS**[1]

On January 24, 2017, the plaintiff was a pretrial detainee confined in the Walker building at the MacDougall-Walker Correctional Institution ("Walker"). The plaintiff was confined in cell B1-11. The plaintiff, along with two other inmates, covered his cell door window to protest the manner in which the Administrative Segregation program is administered at Walker. The inmates were persuaded to remove the covering. All three inmates were issued disciplinary reports for interfering with safety and security. The plaintiff pled guilty to the charge.

After receiving the disciplinary reports, the three inmates again covered their cell door windows. Correctional supervisors, medical staff and mental health staff verbally

---

[1] The facts are taken from the defendants' Local Rule 56(a) Statements and the exhibits submitted by both parties. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. D. Conn. L. Civ. R. 56(a)2 and 56(a)3. Although the defendants informed the plaintiff of this requirement (see ECF No. 61), he has not submitted a Local Rule 56(a)2 Statement. Instead, the plaintiff submitted a declaration, ECF No. 68-1 at 1-3, and a list of disputed factual issues, ECF No. 68-1 at 4. As the plaintiff failed to submit a Local Rule 56(a)2 Statement, the defendants' facts are deemed admitted. See D. Conn. L. Civ. R 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact.").

attempted to persuade the plaintiff to remove the covering from the window and comply with an order to be handcuffed and removed from his cell. The verbal intervention lasted for approximately one hour. The verbal intervention was unsuccessful.

When the plaintiff did not comply with a final order to be handcuffed and exit the cell, a chemical agent was deployed into the cell. After the chemical agent was re-deployed, the plaintiff left his cell voluntarily. He was issued a disciplinary report for flagrant disobedience. He pled guilty to the report.

Defendant Salius had no further interaction with the plaintiff after 12:45 p.m. on January 24, 2017, and had no involvement in subsequent events.

The plaintiff was placed on in-cell restraints in cell B1-31. The plaintiff broke the restraints and smashed the cell door window. He pled guilty to that offense. The plaintiff was moved to Restrictive Housing Unit cell 6 and placed on soft full stationary restraints. Shortly thereafter, at 3:45 p.m., the plaintiff slipped his hands free of the soft restraints. The plaintiff received a disciplinary report for security tampering. He pled guilty.

Defendant Lieutenant Prior determined that the plaintiff should be placed in metal mechanical full stationary restraints. The plaintiff was moved to Restrictive Housing Unit cell 7 for

this purpose. At 3:47 p.m., before he was moved to cell 7, the plaintiff asked to use the bathroom. Defendant Prior denied permission because of the plaintiff's disruptive behavior.

As the metal restraints were applied, the plaintiff threatened to file a lawsuit against defendant Prior for placing him in the metal restraints. The plaintiff made conflicting statements about his need to urinate, claiming both that he had urinated on himself and then that he needed to use the bathroom. When the plaintiff stated that he needed to urinate at 3:53 p.m., defendant Prior told him that he would have a bathroom break in two hours.

At defendant Prior's request, defendant Nurse Walters checked the restraints to confirm that there was proper circulation. She documented restraint checks every fifteen minutes for the entire time the plaintiff was confined in metal restraints. Adequate circulation was found on all but one check. At the 4:45 p.m. check, defendant Walters informed defendant Prior that the left wrist restraint should be loosened. Defendant Prior ordered a correctional officer to loosen that restraint.

At 6:00 p.m., defendant Prior determined that the plaintiff had urinated on himself. He ordered that the plaintiff be given clean clothes and directed that the plaintiff be placed on in-cell restraints. The plaintiff also received a new mattress, a

5

new blanket and clean socks.  He remained on in-cell restraints until 9:15 a.m. the next morning.

The plaintiff filed a level 1 grievance over this incident.  Although the plaintiff states that he filed a level 2 grievance, no such grievance has been located in the Department of Correction files at Walker or in the District Administrator's files.

## III. DISCUSSION

In his complaint, the plaintiff asserted claims under the Eighth and Fourteenth Amendments for use of excessive force.  He also argued that the defendants violated his rights under the Americans with Disabilities Act.  On April 27, 2017, the court issued an Initial Review Order dismissing the Eighth Amendment and Americans with Disabilities Act claims and all claims against defendant Department of Correction.  See ECF No. 8.  The only remaining claims are Fourteenth Amendment claims for use of excessive force or unconstitutional conditions of confinement based on confinement in excessively tight restraints as a pretrial detainee.  See id. at 7, 9.

The defendants move for summary judgment on five grounds.  First, they argue that the plaintiff has not exhausted his administrative remedies.  Second, the defendants contend that the plaintiff's claim is not cognizable because the restraints were used to maintain safety and security rather than for

punishment and the restraints were appropriately applied. Third, they argue that the plaintiff fails to allege a plausible claim against defendant Mudano. Fourth, the defendants argue that the restraints were not modified. Finally, the defendants argue that they are shielded from liability for money damages by the doctrine of qualified immunity. As the court concludes that the plaintiff did not exhaust his administrative remedies, the court addresses only the first ground.

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. See Booth v. Churner, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior

7

to commencing an action in federal court.  See Woodford v. Ngo, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ... (so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules"). Completion of the exhaustion process after a federal action has been filed does not satisfy the exhaustion requirement.  See Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001), overruled on other grounds by Porter, 534 U.S. 516 (2002).  Special circumstances will not relieve an inmate of his or her obligation to adhere to the exhaustion requirement.  An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable.  See Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).

The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Administrative Remedies and may be found at: http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf (effective August 15, 2013).  The type of remedy available to an inmate depends on the nature of the issue or condition experienced by the inmate or the decision made by correctional personnel.  For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in Sections

4(B) through 4(I) of Administrative Directive 9.6, the applicable remedy is the Inmate Grievance Procedure. The grievance procedures apply to the plaintiff's claims for use of excessive force and unconstitutional conditions of confinement. The exceptions listed in the directive all deal with appeals of decisions for which there are other administrative remedy procedures in place.

Under Administrative Directive 9.6(6), an inmate must first attempt to resolve the matter informally. He or she may attempt to verbally resolve the issue with an appropriate staff member or supervisor. See id. at 9.6(6)(A). If attempts to resolve the matter orally are not effective, the inmate must make a written attempt using a specific form and send that form to the appropriate staff member. See id. If all attempts to resolve the matter informally are unsuccessful, an inmate may file a Level 1 grievance. See id. at 9.6(6)(C).

The Level 1 grievance must be filed within 30 calendar days from the date of the occurrence or discovery of the cause of the grievance, and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. See id. The Unit Administrator shall respond in writing to the Level 1 grievance within 30 business days of his or her receipt of the grievance. See id. at 9.6(6)(I).

9

The inmate may appeal to Level 2 the disposition of the grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner. See id. at 9.6(6)(G) & (I). The Level 2 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. See id. at 9.6(K).

Level 2 appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. See id. at 9.6(6)(K). The District Administrator should respond to the Level 2 appeal within 30 business days of receipt of the appeal. See id.

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, and level 2 appeals to which there has been an untimely response by the District Administrator. See id. at 9.6(6)(L). A Level 3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. See id. A Level 3 appeal is reviewed by the Commissioner of Correction or his or her designee. See id.

All grievances and grievance appeals are "submitted by depositing them in a locked box clearly marked as 'Administrative Remedies.'" See id. at 9.6(5)(C). Multiple boxes are located throughout each correctional facility. See id. The Administrative Remedies Coordinator collects the forms

from the boxes each day.  See id. at 9.6(5)(D)(4).

The plaintiff has submitted a copy an Inmate Request Form indicating that his Level 1 grievance was returned to him on April 6, 2017.  See ECF No. 68-2 at 20.  Thus, he had five calendar days, or until April 11, 2017, to submit his Level 2 grievance.  In the Inmate Request Form, the plaintiff states that he submitted a Level 2 grievance "2 to 3 weeks ago."  Id.  The Inmate Request Form is dated May 15, 2016.  The court assumes, as do the defendants, that he intended to date the form May 15, 2017.

Although the response indicates that a Level 2 grievance was not received, for purposes of this ruling only, the court will assume that the plaintiff did submit a Level 2 grievance.  If the court accepts the language in the Inmate Request Form as literally true, the plaintiff has conceded that he did not timely submit the Level 2 grievance.  Two to three weeks before May 15, 2017, means that the plaintiff would have submitted the Level 2 grievance between April 24, 2017, and May 1, 2017.  This is at least 13 days too late.

Moreover, even assuming that the plaintiff did timely submit the Level 2 grievance, he did not exhaust his administrative remedies.  The directive provides that the District Administrator has 30 business days to respond to a Level 2 grievance.  The plaintiff filed this action on April 13,

2017, a mere seven calendar days after he received the response to the Level 1 grievance. The Inmate Request Form shows that, over a month after filing this action, the plaintiff still was pursuing his administrative remedies.[2]

In opposition to the motion for summary judgment, the plaintiff refers the court to a case holding that if the defendants contend that they never received a timely filed grievance and then deny subsequent attempts to file a grievance on the issue as untimely, the inmate has satisfied the exhaustion requirement. See ECF No. 68-1 at 7 (citing Brookins v. Vogel, No. 1:05-CV-0413-OWW-DLB-P, 2006 WL 3437482, at *3 (E.D. Cal. Nov. 28, 2006)). He does not, however, address the requirement that these events should have occurred before he filed a civil rights action. While it is true that the failure to exhaust may be excused if remedies are not available, Ross v. Blake, 136 S. Ct. at 1858, at the time the plaintiff filed the complaint, that was not the case. He states that he filed a Level 2 grievance, showing that remedies were available to him prior to the filing of the complaint. Even if a trier of fact were to later find that the Level 2 grievance was not properly filed or intentionally misplaced, that was not the case on April 13, 2017. Thus, this case was prematurely filed.

---

[2] Even if the plaintiff's Level 2 grievance was received on April 6, 2017, the earliest possible date, the response period would not expire until May 18, 2017, three days after his request.

The plaintiff was required to fully exhaust his administrative remedies before filing this action. See id., 136 S. Ct. at 1854-55 (Prison Litigation Reform Act "mandates" that inmate exhaust administrative remedies before filing suit); Neal v. Goord, 267 F.3d at 122 (completing exhaustion process after filing federal court action does not satisfy exhaustion requirement). As the plaintiff filed the complaint in this case before the response period on his Level 2 grievance had expired, he did not do so.

Accordingly, the defendants' motion for summary judgment is being granted on the ground that the plaintiff did not exhaust his administrative remedies.

## IV. CONCLUSION

The defendants' motion for summary judgment [ECF No. 61] is hereby GRANTED. The Clerk is directed to enter judgment and close this case.

It is so ordered.

Signed this 10th day of May 2018 at Hartford, Connecticut.

                                                _____/s/AWT_____
                                                        Alvin W. Thompson
                                        United States District Judge